IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 21-40540-399 |
| | ) | [Motion for Joint Administration Pending] |
| MISSOURI JACK, LLC, *et al*, | ) | Chapter 11 |
| | ) | Hon. Barry S. Schermer |
| | ) | |
| Debtors and Debtors in Possession. | ) | Hearing Date: February 19, 2021 |
| | ) | Hearing Time: 10:00 a.m. |

**EMERGENCY FIRST-DAY MOTION BY MISSOURI JACK, LLC AND ILLINOIS JACK, LLC, DEBTORS AND DEBTORS IN POSSESSION FOR AUTHORITY TO (I) PAY PREPETITION WAGES, SALARIES, AND OTHER COMPENSATION AND BENEFITS, (II) MAINTAIN EMPLOYEE BENEFIT PROGRAMS AND PAY RELATED ADMINISTRATIVE OBLIGATIONS, AND (III) AUTHORIZE AND DIRECT BANKS TO HONOR AND PROCESS RELATED CHECKS AND TRANSFERS**

Missouri Jack, LLC ("**MoJack**") and Illinois Jack, LLC ("**IlJack**" and together with MoJack, "**Debtors**"), by and through the undersigned counsel, files the within Emergency First-Day Motion (the "**Wage Motion**") for Authority to (i) Pay Prepetition Wages, Salaries, and Other Compensation and Benefits, (ii) Maintain Employee Benefit Programs and Pay Related Administrative Obligations, and (iii) Authorize and Direct Banks to Honor and Process Related Checks and Transfers, pursuant to Sections 105(a), 507(a)(3), 507(a)(4), and 507(a)(5) of Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**"), Rules 4001, 6003(b), 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Bankruptcy Rules for the Eastern District of Missouri (the "**Local Bankruptcy Rules**"). Debtors have separately filed a *Declaration of Hamid Sharafatian in Support of Debtors' Emergency First-Day Motions* that contains evidence in support of this Wage Motion and is therefore incorporated herein by reference.

## INTRODUCTION

1. The three related debtors are MoJack, IlJack and Conquest Foods, LLC, a Delaware limited liability company ("**Conquest**"). Conquest is the sole member of MoJack and IlJack. The sole manager of MoJack and IlJack is TNH Partners, LLC, a California limited liability company ("**TNH**"). TNH is also the sole managing member of Conquest.

2. Debtors collectively own and operate 70 Jack in the Box restaurants throughout Missouri and Illinois pursuant to various franchise and related agreements ("**Franchise Documents**") with Jack in the Box Inc., a Delaware corporation, and its affiliated entities (collectively, together with any of their assignees, "**JIB**"). Debtors collectively employ 1,660 active full and part time employees, of which MoJack employs 1,338 and IlJack employs 332.

3. MoJack's principal place of business is located at 13768 Shoreline Drive, Earth City, Missouri, 63045. Pursuant to the Franchise Documents, MoJack currently owns and operates 57 Jack in the Box restaurants in Missouri ("**MoJack Franchise Restaurants**").

4. IlJack's principal place of business is also located at 13768 Shoreline Drive, Earth City, Missouri, 63045. IlJack is also a party to the Franchise Documents, pursuant to which it currently owns and operates 13 Jack in the Box restaurants in Illinois ("**IlJack Franchise Restaurants**," and, together with the MoJack Franchise Restaurants, "**Franchise Restaurants**").

5. Conquest is a co-franchisee of the Franchise Restaurants under the Franchise Documents. Conquest is also a co-borrower under a loan from City National Bank ("**CNB**") (Debtors' largest creditor apart from JIB), and a co-defendant in a lawsuit filed by CNB (discussed below). Conquest does not have operations or employees of its own, and its primary assets are its membership interests in Debtors and its rights under the Franchise Documents.

6. Debtors and Conquest filed voluntary petitions for relief under Chapter 11 of the

Bankruptcy Code on February 16, 2021 ("**Petition Date**") and have filed a motion seeking joint administration of their cases. Debtors and Conquest filed Chapter 11 to implement a restructuring agreement that has been reached with JIB and to reorganize their financial affairs. This Motion is one of several first-day motions being filed by Debtors.[1]

7. No trustee has been appointed in these cases, and Debtors are operating their businesses and managing their assets as debtors in possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

8. The relief requested is necessary to avoid irreparable harm and is appropriate because Debtors require the labor and services of their current employees in order for business operations to continue uninterrupted and to generate funds in support of the overall reorganization strategy. In summary, Debtors' recent pay period ended on February 15, 2021 (the "**February 15 Pay Period**"), and all current employees are due their earned wages from that period. Payroll checks are scheduled to be issued on February 19, 2021.

9. Without satisfying the Employee Obligations, (as defined herein), Debtors may lose valuable employees, causing a detrimental interruption in Debtors' operations. Furthermore, given the current economic conditions and health risks caused by the global COVID-19 pandemic, replacing employees at this time could be difficult, if not impossible. Moreover, the failure to receive timely paychecks will result in extreme hardship to employees.

10. Accordingly, Debtors submit that the relief sought herein is necessary to avoid irreparable harm, to allow continued operations, avoid harm to employees, and to facilitate achieving the reorganizational goals of these Chapter 11 cases.

---

[1] In addition to the first-day motions that have been filed, Debtors have the following additional "first day" motions that were not completed in time for the emergency filing due to time constraints: (a) honor customer programs, (b) DIP financing, (c) critical vendor, and (d) limiting notice.

## CONCISE STATEMENT OF RELIEF REQUESTED

11. Pursuant to Sections 105, 507, 363, and 362 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003(b), 6004 and 9014, Debtors set forth the following concise statement of the relief requested in this Motion:

> Debtors seek entry of an Order authorizing them to pay Employee Obligations, as defined herein, and directing Bank of America to honor any payments for the Employee Obligations.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

13. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

14. The venue of these case and this Wage Motion are proper in this district under 28 U.S.C. §§ 1408 and 1409(a). MoJack is a registered Missouri limited liability company that has both its principal place of business and its principal assets in the Eastern District of Missouri. IlJack has its principal business office in Missouri. Furthermore, IlJack and Conquest are related cases to the lead case filed by MoJack. Additionally, this Wage Motion is a proceeding arising in cases under the Bankruptcy Code that are properly commenced in this district.

15. The statutory predicates for the relief requested herein are Sections 105(a), 362(d), 363(b) and 507 of the Bankruptcy Code and Bankruptcy Rules 4001, 6003 and 6004.

## FACTUAL BASIS FOR THIS MOTION

16. Debtors are in the business of operating the Franchised Restaurants.

17. Increase in fast food competition contributed to Debtors' financial issues. In 2018, aggressive competitive intrusion into the market not only reduced market share, but also impacted the ability to obtain qualified employees. The situation was exacerbated by the pandemic. As a result of economic stress, Debtors fell behind in payments to CNB beginning in 2018. On March 2, 2020, CNB filed a Complaint for Breach of Contract and Claim and Delivery

against all three Debtors ("**CNB Complaint**") seeking over $15 million alleged to be due and owing under the terms of several loans made by CNB to Debtors ("**CNB Loan**").

18. Debtors and Conquest filed Chapter 11 to finalize and implement a restructuring agreement that has been negotiated with JIB and to reorganize their financial affairs.

19. JIB, the Debtors, and Conquest have been negotiating an out-of-court workout for nearly a year, and those negotiations have resulted in a proposal by JIB whereby, among other concessions, Debtors will be able to close 7 or 8 unprofitable locations without defaulting under the Franchise Documents, and JIB will permit assumption of such agreements and allow Debtors to proceed with reorganization. JIB has also agreed to additional modifications to the Franchise Documents that will enhance Debtors' efforts to reorganize.

20. Debtors' most recent employee pay period ended on February 15, 2021 giving rise to pre-petition payroll obligations.

## RELIEF REQUESTED

21. By this Wage Motion, Debtors request entry of an Order: (i) authorizing, but not directing, Debtors to pay or otherwise honor, in their sole discretion, the following Compensation Obligations, Payroll Processing Obligations, Payroll Tax Obligations, Employee Benefit Obligations (as defined herein, together with any related costs or expenses of administration, collectively, the "**Employee Obligations**") as set forth on **Schedule 1**[2]; (ii) authorizing, but not directing, Debtors to continue in the ordinary course of their businesses, prepetition practices, programs, and policies for employees in effect as of the date hereof, and as those practices, programs, and policies may be modified, amended or supplemented from

---

[2] As of the drafting of this Motion, Debtors did not yet have the final hours available to calculate the exact payroll for the February 15 Pay Period. The amounts set forth in Schedule 1 and this Wage Motion are a good faith estimate based on Debtors' payroll run on January 31, 2021. Debtors will supplement with a more accurate Schedule with the actual amounts due for the February 15 Pay Period prior to the hearing on this Wage Motion.

2648759v1                                     5

time to time in the ordinary course of Debtors' businesses and to honor any related administrative costs and obligations arising thereunder; and (iii) authorizing and directing Bank of America to process and honor related transfers.

22. Debtors further request that the Court authorize and direct Bank of America to receive, process, honor and pay all checks presented for payment and electronic payment requests relating to the foregoing to the extent directed by Debtors in accordance with this Wage Motion, whether such checks were presented or electronic requests were submitted before or after the Petition Date, and that Bank of America be authorized and directed to rely on the Debtors' designations of any particular check or electronic payment request as appropriate pursuant to this Wage Motion, without any duty of further inquiry, and without liability for following the Debtors' instructions.

## The Debtors' Employees

23. Debtors' 1,660 full and part time employees perform a variety of critical functions, including management, administration, maintenance, finance and accounting, human resources, safety, security, procurement and preparation of food related items for ultimate delivery to consumers, and other areas crucial to the Debtors' businesses. The employees are fundamental to the success of Debtors' businesses and continued operations and, as a result, critical to these chapter 11 cases and Debtors' reorganization efforts.

## Employee Obligations

24. Debtors estimate that, as of the Petition Date, the aggregate amount of their unpaid Employee Obligations is approximately $925,000 for MoJack and $225,000 for IlJack, due for the February 15 Pay Period.

A. **Compensation Obligations**

25. Debtors pay employees' salaries, wages and other compensation (including overtime pay) in exchange for services they provide (the "**Compensation Obligations)**.

26. As of the Petition Date, Debtors estimate that the aggregate amount of unpaid Compensation Obligations accrued prepetition related to the February 15 Pay Period totals approximately $720,000 for MoJack and $168,000 for IlJack.

27. Debtors are not seeking authority to pay to any individual any amount in prepetition Compensation Obligations that would exceed the $13,650 priority cap imposed by Section 507(a)(4) of the Bankruptcy Code.

B. **Payroll Processing Obligations**

28. Debtors use Payarc to administer payroll for employees and provide related payroll processing, payroll tax reporting, time entry systems, payment preparation, payroll transfer administration and other reporting and administrative services (the "**Payroll Processing Obligations**"). Debtors typically pay approximately $6,000 for MoJack and $1,000 for IlJack each pay period for Payroll Processing Obligations.

C. **Payroll Tax Obligations**

29. As employers, Debtors are required by law to withhold from certain employees' salaries, wages, and other compensation amounts related to federal, state, and local income taxes, as well as Social Security and Medicare taxes (collectively, the "**Withholding Taxes**") and to remit them to the appropriate taxing authorities (collectively, the "**Taxing Authorities**"). Debtors are also required to make payments from their own funds on account of Social Security and Medicare taxes and to pay, based on a percentage of gross payroll (and

subject to state-imposed limits), additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively, the "**Employer Payroll Taxes**" and, together with the Withholding Taxes, the "**Payroll Tax Obligations**"). .

30. As of the Petition Date, Debtors estimate that they owe approximately $194,000 for MoJack and $54,000 for IlJack in Payroll Tax Obligations relating to the prepetition period.

D. <u>Employees' Child Support Garnishments</u>

31. Debtors also process child support garnishments owed by various Employees as part of the Employee Obligations. It is estimated that Debtors must process approximately $5,000 for MoJack $2,700 and for IlJack ("**Employees' Child Support Garnishments**") stemming from the February 15 Pay Period. Accordingly, Debtors seek authorization to process the Employees' Child Support Garnishments as part of the relief sought herein.

E. <u>Employee Benefits</u>

32. In addition to the aforementioned payment-related obligations, Debtors maintain various employment benefit plans and policies for their employees, including health care, vision, dental, and other miscellaneous benefit programs (collectively, the "**Employee Benefits**", and the obligations related thereto, the "**Employee Benefit Obligations**"). Participation in the Employee Benefits is at the discretion of each individual employee and varies based on their participation therein.

   i. *Health Care Benefits*

33. Medical, dental, vision, and other health care benefits (collectively, the "**Health Care Benefits**") are available to eligible employees of Debtors. The Health Care Benefits of employees' and Debtors' contributions ("**Health Care Benefit Obligations**") are set forth on

**Schedule 2** attached hereto.

34. Debtors seek authorization for payment of the Health Care Benefit Obligations in the approximate amount of $22,000 for MoJack and $ 2,700 for IlJack, that will come due and stem from both employees' and Debtors' contributions.

    *ii. Miscellaneous Benefit Programs*

35. Debtors also maintain additional Employee Benefits including, payment to employees' garnishments, disability insurances, life insurances, and telephone programs which are all funded entirely by "after-tax" employee contributions (collectively the "**Miscellaneous Benefit Programs**"). Debtors also seek authorization to continue to operate and administer the Miscellaneous Benefit Programs as part of the Employee Benefit Obligations.

36. The approximate amount of the Miscellaneous Benefit Program payments expected to be due related to the February 15 Pay Period (the "**Miscellaneous Benefit Obligations**") is set forth on **Schedule 3**.

37. The Miscellaneous Benefit Obligations are funded exclusively by employee contributions but are administered by Debtors through Payarc.

38. Accordingly, Debtors seek authorization to satisfy all unpaid Miscellaneous Benefit Obligations in the approximate amount of $2,300 for MoJack and $150 for IlJack stemming from the February 15 Pay Period.

## BASIS FOR RELIEF

*(i)  Debtors Should be Permitted to Pay the prepetition Employee Obligations.*

39. Under Section 507(a)(4)(A) of the Bankruptcy Code, claims of employees against a debtor for "wages, salaries, or commissions, including vacation, severance and sick

leave pay," that are "earned within 180 days before" the date on which a debtor's chapter 11 case is commenced are afforded priority unsecured status up to $13,650 per individual (the "**Prepetition Compensation Cap**").

40. Similarly, Section 507(a)(5) of the Bankruptcy Code provides that employees' claims for contributions to certain employee benefit plans are also afforded priority unsecured status to the extent of $13,650 per employee covered by such plans, less any amount paid pursuant to section 507(a)(4) of the Bankruptcy Code. Under Section 1114(e)(2), retiree benefits required to be made before a plan is confirmed have the status of an allowed administrative claim as provided in Section 503.

41. Debtors believe they will not make payments to any employee more than the Prepetition Compensation Cap on account of the prepetition Compensation Obligations. As priority claims, such Prepetition Employee Obligations must be paid in full before any general unsecured obligations of Debtors may be satisfied. Further, payments for retiree benefits are deemed administrative expenses under the Bankruptcy Code and must be paid in full prior to making any payments on general unsecured claims. Accordingly, the relief requested herein likely will affect only the timing of the payment of a substantial portion of the Prepetition Employee Obligations and should not prejudice the rights of general unsecured creditors.

42. The Court may also grant the relief requested herein pursuant to Section 363 of the Bankruptcy Code. Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).

43. Under Section 363 of the Bankruptcy Code, a court may authorize a debtor to pay certain prepetition claims where a sound business purpose exists for doing so. *See, In re*

2648759v1                                              10

*Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989) (finding that there must be a sound business justification to justify payment of prepetition wages).

44. In addition, the Court has the authority, pursuant to its equitable powers under Section 105(a) of the Bankruptcy Code, to authorize the relief requested herein, because such relief is necessary for Debtors to carry out their fiduciary duties under section 1107(a) of the Bankruptcy Code. *See Lehigh and New England Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981) (recognizing that payments of prepetition claims that are necessary for continued operations will benefit the interests of all parties); *see also, In re CEI Roofing, Inc.*, 315 B.R. 50, 59 (Bankr. N.D. Tex. 2004); *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002); *Unofficial Comm. of Equity Holders v. McManigle* (*In re Penick Pharm., Inc.*), 227 B.R. 229, 232-33 (Bankr. S.D.N.Y. 1998)

45. Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of" the Bankruptcy Code. 11 U.S.C. § 105(a); *See also, Ionosphere Clubs*, 98 B.R. at 175 (applying section 105(a) to justify an order authorizing the payment of certain prepetition wages, salaries, medical benefit and business expense claims to debtor's employees); *see e.g. In re Just for Feet, Inc.*, 242 B.R. 821,824- 25 (D. Del. 1999).

46. The importance of a debtor's employees to its operations has been repeatedly recognized by courts in this district and others, and as such, courts have authorized debtors to pay prepetition employee obligations in the ordinary course of business in chapter 11 cases, such as these cases, that involve a significant work force that is critical to the debtor's reorganization efforts. *See, e.g., In re Bridge Information Systems, Inc.*, Case No. 01-41593-293 (Bankr. E.D. Mo. February 16, 2001; *Laclede Steel Co.*, Case No. 01-48321-399

(Bankr. E.D. Mo. December 12, 1998); *Burchinal v. Central Washington Bank (In re Adams Apple, Inc.)*, 829 F.2d 1484, 1490 (9th Cir. 1987); *In re Heyl & Patterson, Inc.*, No. 16-21620 (CMB) (Bankr. W.D.Pa. May 4, 2016).

47. Payment of the Employee Obligations and the continuation of the Employee Benefits are warranted and justified by the facts and circumstances of these chapter 11 cases. Debtors' employees are vital to the continued operation of the Debtors' businesses and necessary for a successful reorganization.

48. Furthermore, with the current economic conditions and health risks brought on by the global COVID-19 pandemic, in the event employees were lost due to non-payment of wages and benefits, it would be difficult, if not impossible, to replace employees without incurring unnecessary costs and disruption to the Debtors' businesses. Accordingly, without the relief sought herein, Debtors and their estates will likely suffer irreparable harm.

49. Authorization to pay the Payroll Tax Obligations is also warranted because such Payroll Tax Obligations generally give rise to priority claims under section 507(a)(8) of the Bankruptcy Code and, therefore, general unsecured creditors will not be prejudiced by such payment.

50. Further, Withholding Taxes are held in trust for the Taxing Authorities and are not property of Debtors' estates under section 541 of the Bankruptcy Code. *See Begier v. IRS*, 496 U.S. 53, 66-67 (1990).

51. Debtors also believe that it is necessary to pay the administrative costs owed to third-party vendors who provide compensation and other benefit-related services and products. Absent the relief requested, Debtors will be unable to maintain their compensation and benefit programs in an efficient and cost-effective manner. Accordingly, cause exists for the Court to

authorize the Payroll Processing Obligations.

### (ii) *Cause Exists to Authorize and Direct Debtors' Bank to Honor Checks and Electronic Fund Transfers.*

52. Debtors project that they will have sufficient funds to pay the amounts described herein in the ordinary course of their businesses. Moreover, under Debtors' existing cash management system, Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the obligations discussed herein. Accordingly, Debtors believe that: (a) checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently; (b) the Court should authorize and direct Bank of America, when requested by the Debtors, to receive, process, honor and pay all checks or wire transfer requests in respect of the relief requested herein; and (c) Bank of America should be able to rely on Debtors' representations without any duty of further inquiry and without liability for following Debtors' instructions.

### (iii) *Debtors Have Satisfied Bankruptcy Rule 6003(b).*

53. Bankruptcy Rule 6003(b) provides that, to the extent relief is necessary to avoid immediate and irreparable harm, a bankruptcy court may issue an order granting "a motion to use, sell, lease, or otherwise incur an obligation regarding property of the estate, including a motion to pay all or part of a claim that arose before the filing of the petition" within 21 days of the Petition Date.

54. As described above, Debtors' employees are vital to their operations. Failure to satisfy obligations with respect to these persons in the ordinary course of their businesses during the first 21 days of these chapter 11 cases will jeopardize their loyalty and trust, which may cause such individuals to leave Debtors' employ or service at a time when they are needed most.

55. The disruption to Debtors' business operations by employee unrest would be severe and potentially irreparable. Moreover, Debtors' employees rely on the Employee Benefits and the effect could be financially ruinous if Debtors cannot immediately pay them in the ordinary course of their businesses. Accordingly, Debtors submit that the relief requested herein is necessary to avoid immediate and irreparable harm, and, therefore, Bankruptcy Rule 6003 is satisfied.

*(iv)    Request for Bankruptcy Rule 6004(a) and (h) Waivers.*

56. To implement the foregoing successfully, Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14 day stay of an order authorizing the use, sale or lease of property under Bankruptcy Rule 6004(h). As explained above, the relief requested is necessary to avoid immediate and irreparable harm to Debtors. Accordingly, ample cause exists to justify the waiver of the notice requirements under Bankruptcy Rule 6004(a)- and 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent such notice requirements and such stay apply.

**REQUEST FOR EXPEDITED RELIEF**

57. In order to obtain a hearing on an expedited basis, a movant must show the reason the matter should be considered on an expedited or emergency basis. Local Bankruptcy Rule 9013-2

58. In the instant case, just cause exists for the Court to hold an expedited hearing on this matter as a obtaining a determination on the Wage Motion under the normal notice period would cause Debtors to incur irreparable harm.

59. Specifically, Payroll is due and checks for the February 15 Payroll Period are due to be distributed on February 19th.

60. Accordingly, Debtors respectfully request that the Court schedule the Motion for hearing on an expedited basis.

## NOTICE

61. On February 16, 2021, Debtors provided a copy of this Wage Motion to all parties that appear on the Master Service List and notice of this Motion to all parties that appear on the Master Notice List and to those effected by this Motion, by way of Fed-ex Overnight Delivery in accordance with Bankr. E.D. Mo. L.R. 9013-3(A)(1) and (D).

62. Debtors also notified the U.S. Trustee of the filing of the Bankruptcy Cases at least 24 hours prior to the filing in accordance with Local Bankruptcy Rule 9013-3(A)(2).

63. Accordingly, the notice of this Wage Motion has been adequate and in compliance with the requirements of the Bankruptcy Rules and Local Bankruptcy Rules.

**WHEREFORE,** Debtors respectfully request immediate entry an Order granting the relief requested herein, and Debtors pray that this Court grant such other relief that is just and proper.

Dated:  February 16, 2021            LEECH TISHMAN FUSCALDO & LAMPL, INC.

Sandford L. Frey #117058CA
Leech Tishman Fuscaldo & Lampl, Inc.
200 South Los Robles Avenue, Suite 300
Pasadena, CA 91101
(626) 796-4000
sfrey@leechtishman.com

[Proposed] Reorganization Attorneys for
Missouri Jack, LLC, Illinois Jack, LLC, and
Conquest Foods, LLC,
Debtors and Debtors in Possession
*Pro Hac Vice Admission pending*

                                                  Respectfully Submitted,

Date: February 16, 2021          SUMMERS COMPTON WELLS LLC
                                                  By    /s/   David A Sosne
                                                    David A. Sosne (#28365MO)
                                                    Brian J. LaFlamme (#49776MO)
                                                    Seth A. Albin (#46483MO)
                                                    8909 Ladue Road
                                                    St. Louis, MO 63124
                                                    (314) 991-4999
                                                    (314) 991-2413 Fax
                                                    Email:
                                                    dasattymo@summerscomptonwells.com
                                                    blaflmme@summerscomptonwells.com
                                                    salbin@summerscomptonwells.com

                                                    [Proposed] Reorganization Attorneys for
                                                    Missouri Jack, LLC, Illinois Jack, LLC, and
                                                    Conquest Foods, LLC,
                                                    Debtors and Debtors in Possession

## SCHEDULE I

## EMPLOYEE OBLIGATIONS*

**MoJack Employee Obligations:**

| Employee Obligation | Estimated Amount |
|---|---|
| Compensation Obligations | $720,000 |
| Payroll Processing Obligations | $6,000 |
| Payroll Tax Obligations | $194,000 |
| Employees' Child Support Garnishments | $5,000 |
| **Total:** | **$925,000** |

**IlJack Employee Obligations:**

| Employee Obligation | Estimated Amount |
|---|---|
| Compensation Obligations | $168,000 |
| Payroll Processing Obligations | $1,000 |
| Payroll Tax Obligations | $54,000 |
| Employees' Child Support Garnishments | $ 2,000 |
| **Total** | **$225,000** |

*Amounts are estimated based on Debtors' January 31, 2021 payroll run.*

2648759v1

17

Case 21-40540    Doc 8    Filed 02/16/21    Entered 02/16/21 17:01:43    Main Document
                                Pg 18 of 19

## SCHEDULE 2
## EMPLOYEE BENEFIT OBLIGATIONS*

**MoJack Employee Benefit Obligations:**

| Benefit | Provider | Debtor's Contribution | Employee's Cont. | Total |
|---|---|---|---|---|
| Health Care | Anthem | $8,784.97 | $11,500.48 | $20,285.45 |
| Dental | Anthem Dental | $695.32 | $652.28 | $1,347.60 |
| Vision | Anthem Vision | $199.75 | $135.77 | $335.52 |
| **February 15 PP Total** | | **$9,680.04** | **$12,288.53** | **$21,968.57** |

**IlJack Employee Benefit Obligations:**

| Benefit | Provider | Debtor's Contribution | Employee's Cont. | Total |
|---|---|---|---|---|
| Health Care | Anthem | $ 1,352.25 | $ 1,184.83 | $2,537.08 |
| Dental | Anthem Dental | $ 50.70 | $ 55.26 | $105.96. |
| Vision | Anthem Vision | $ 10.30 | $ 15.42 | $25.72 |
| **February 15 PP Total** | | **$1,413.25** | **$1,255.51** | **$2,668.76** |

*Amounts are estimated based on Debtors' January 31, 2021 payroll run.*

# SCHEDULE 3

## MISCELLANEOUS BENEFIT OBLIGATIONS*

**MoJack Miscellaneous Benefit Obligations:**

| Benefit/Program | Provider | Employee's Cont. |
|---|---|---|
| Garnishments | | $180.18 |
| Child Support Fee | | $93.00 |
| Telephone | | $56.74 |
| Whole Life Insurance | | $304.86 |
| Group Term Life Insurance | | 285.56 |
| Group Accident Insurance | | $365.58 |
| Group Specified ID | | $196.79 |
| Group Disability | | $695.49 |
| Group Diasab. C/U | | $137.70 |
| **Total** | | **$2,315.90** |

**IlJack Miscellaneous Benefit Obligations:**

| Benefit | Provider | Employee's Cont. |
|---|---|---|
| Child Support Fee | | $ 25.00 |
| Whole Life Insurance | | $ 39.25 |
| Group Term Life Insurance | | $ 44.97 |
| Group Accident Insurance | | $ 41.15 |
| **Total** | | **$150.37** |

*Amounts are estimated based on Debtors' January 31, 2021 payroll run.